WALL, RESPONDENT, v. THE HELENA STREET RAILWAY COMPANY, APPELLANT.

[Submitted December 18, 1891. Decided March 28, 1892.]

NEGLIGENCE—*Degree of care required of pedestrian upon city street.*—A person in attempting to cross a city street is bound to exercise reasonable care and caution, and it is the duty of a street railway company to so run its cars as to avoid, by the exercise of ordinary prudence and caution, injury to pedestrians.

SAME—*Street railways—Liability for injuries.*—A street railway company is liable for injuries to a pedestrian occasioned by the want of attention, carelessness, or negligence, and which are not simply the result of an accident which could not have been foreseen by the exercise of ordinary and reasonable care and prudence.

SAME— *Contributory negligence.*—Plaintiff in attempting to cross the track of a street railway was struck by the pole of an approaching car, knocked down and dragged thirty or forty feet. While held between the scraper and the wheel bystanders raised the end of the car to remove plaintiff, but were compelled, by a movement of the horses, to drop it before plaintiff was rescued, whereby he sustained dangerous injuries. It appeared that plaintiff's view of the track was obstructed by other vehicles; that the driver was a boy of fifteen and a half years, lacking strength needful for his employment; that the speed of the car was greater than that allowed by ordinance; that a competent driver under the circumstances could have stopped the car within fifteen feet, and within less distance had the speed of the car been within the limit of the city ordinance. *Held*, that under the facts, the negligence of the defendant and contributory negligence on the part of plaintiff were questions for the jury, and a verdict for plaintiff would not be disturbed. (DE WITT, J., dissenting, and placing a different construction upon the facts, as to which see his opinion.)

*Appeal from First Judicial District, Lewis and Clarke County.*

Action for damages for personal injuries. The cause was tried before HUNT, J. Plaintiff had judgment below.

*H. G. McIntire,* for Appellant.

I. It was error to deny defendant's motion for a nonsuit. (*a*) The rule is universal that in an action charging negligence there must be some evidence adduced by the plaintiff to prove the same. This was not done in this case. (*b*) When it appears from the plaintiff's testimony in an action, the gist of which is negligence, that the injury was occasioned by plaintiff's own act, then it becomes incumbent upon him to negative the fact that such act was without fault on his part. We have found no authorities to the contrary of this proposition. The line of decisions is unbroken that where the proximate cause of an injury is some act of the plaintiff then the burden of proving contributory negligence shifts, and it becomes incumbent upon him to show himself free from negligence in the premises. (*Kennon* v. *Gilmer,* 4 Mont. 433; *Louisville & N. R. R. Co.* v. *Yniestra,* 21 Fla. 700, 728; *Baltimore & O. R. R. Co.* v. *Whitacre,* 35 Ohio St. 627; *Robison* v. *Gary,* 28 Ohio St. 241; *Dallas etc. Ry. Co.* v. *Spicker,* 61 Tex. 427; 48 Am. Rep. 298; *Missouri Pac. Ry. Co.* v. *Foreman,* 73 Tex. 311; 15 Am. St. Rep. 785; *Hudson* v. *Wabash etc. Ry. Co.* 101 Mo. 13; *North Birmingham St. Ry. Co.* v. *Calderwood,* 89 Ala. 247; 18 Am. St. Rep. 105; *Belton* v. *Baxter,* 54 N. Y. 245; 13 Am. Rep. 578; Abbott's Trial Evidence, p. 596; Beach on Contributory Negligence, p. 432; 2 Thompson on Negligence, pp. 1155,

1178; Wharton on Negligence, §§ 426, 427; 3 Lawson's Rights, Remedies, and Practice, p. 2144; *Murphy* v. *Deane*, 101 Mass. 466; 3 Am. Rep. 390; *Moore* v. *Abbot*, 32 Me. 46; *Higgins* v. *Jeffersonville etc. Ry. Co.* 52 Ind. 110; *Savannah etc. Ry. Co.* v. *Shearer*, 58 Ala. 672; *Cramer* v. *Burlington*, 42 Iowa, 315; *Hubbard* v. *Mason City*, 60 Iowa, 400; *Coates* v. *Burlington etc. Ry. Co.* 62 Iowa, 486; *McCann* v. *Sixth Ave. Ry. Co.* 56 N. Y. Sup. Ct. 282; *Dunn* v. *Cass Ave. etc. Ry. Co.* 98 Mo. 652; *Citizens' Pass. Ry. Co.* v. *Thomas*, 132 Pa. St. 504; *Esrey* v. *Southern Pac. Co.* 88 Cal. 399.) In *Kennon* v. *Gilmer, supra,* the complaint itself alleged that the injury had been brought about by plaintiff's act, and it was held that the failure to negative fault in so acting rendered the complaint fatally defective. The same rule, of course, will apply if this fact is brought out by the plaintiff's testimony. There is not a *scintilla* of evidence in this case that in endeavoring to pass a rapidly moving vehicle, and in so doing jumping in front of another, the plaintiff acted as a reasonable and prudent person.

II.   The instructions given by the court upon the question of contributory negligence do not state the correct doctrine. (Sackett on Instructions to Juries, pp. 254, 264, and cases cited therein, and *supra.*)

*Henry C. Smith,* and *W. D. Gardiner,* for Respondent.

I.   The evidence conclusively shows negligence on the part of the defendant in having for a driver so young, weak, and inexperienced a boy, and in allowing its car to be driven at so great a speed through a crowded thoroughfare, and it appears from the evidence that if the driver had been a capable person, and, after discovering plaintiff's peril, had promptly used the appliances at hand for stopping the car, the injury to plaintiff might have been avoided. (*Pope* v. *Kansas City Cable Ry. Co.* 99 Mo. 400–405; *Durman* v. *Broadway Ry. Co.* 1 N. Y. S. 334; S. C. 5 N. Y. Super. Ct. 769; *Brown* v. *Ry. Co.* 4 N. Y. S. 192; S. C. 56 N. Y. Super. Ct. 356; *Hays* v. *Gainesville etc. Ry. Co.* 70 Tex. 602–607; 8 Am. St. Rep. 624.)

II.   Negligence is always a question for the jury, although the facts are undisputed, when the measure of duty is ordinary

and reasonable care, or if there is any evidence tending to show negligence. (*Railroad Co.* v. *Stout,* 17 Wall. 657–664; *Gaynor* v. *Old Colony etc. Ry. Co.* 100 Mass. 208–212; 97 Am. Dec. 96; *Nelson* v. *Chicago etc. Ry. Co.* 60 Wis. 320–324; *West Chester & Philadelphia R. R. Co.* v. *McElwee,* 67 Pa. St. 311–315; *Davies* v. *Oceanic Steamship Co.* 89 Cal. 280; *Belton* v. *Baxter,* 58 N. Y. 411; 2 Redfield on Railroads, p. 231; *Williams* v. *Grealy,* 112 Mass. 79.) Therefore appellant's motion for nonsuit was properly overruled.

III. That portion of instruction No. 1 objected to by appellant states the law applicable to this case correctly. To sustain it we cite: *Kelley* v. *Union Ry. etc. Co.* 18 Mo. App. 151–156; affirmed in 95 Mo. 279–284; *Citizens' Street Ry. Co.* v. *Steen,* 42 Ark. 321, and cases cited on page 328; *Hays* v. *Gainesville etc. Ry. Co. supra; Troy* v. *Cape Fear etc. R. R.* 99 N. C. 298; 6 Am. St. Rep. 521; *Railroad Co.* v. *Gladmon,* 15 Wall. 401–405; *Houston & T. C. Ry. Co.* v. *Sympkins,* 54 Tex. 615; 38 Am. Rep. 632; 4 Am. & Eng. Encycl. of Law, p. 75; 1 Shearman & Redfield on Negligence, § 99, and cases cited; *Hilz* v. *Missouri Pac. Ry. Co.* 101 Mo. 36; *Hanlon* v. *Missouri Pac. Ry. Co.* 104 Mo. 381; *Kelley* v. *Hannibal & S. Ry. Co.* 75 Mo. 138; *Needham* v. *San Francisco etc. R. R. Co.* 37 Cal. 421.)

IV. The weight of authority, the better reasoning, and the later cases are to the effect (as appellant admits in its brief) that the burden is on defendant to prove contributory negligence of plaintiff. (*Railroad Co.* v. *Gladmon,* 15 Wall. 401; *MacDougall* v. *Central R. R. Co.* 63 Cal. 431; *Randall* v. *Northwestern Tel. Co.* 54 Wis. 140–147; 41 Am. Rep. 17; *Indianapolis etc. R. R. Co.* v. *Horst,* 93 U. S. 291–298; *Higley* v. *Gilmer,* 3 Mont. 90; 35 Am. Rep. 450; 1 Shearman & Redfield on Negligence, § 108.) And if there is any evidence from which negligence might be inferred, the verdict will be held conclusive on appeal. (*Cook* v. *Clay Street Hill R. R. Co.* 60 Cal. 604–609; *Wilson* v. *Southern Pac. R. R. Co.* 62 Cal. 164.)

V. The question of proximate cause of an injury is for the jury. (1 Shearman & Redfield on Negligence, § 55; *McQuilken* v. *Central Pac. R. R. Co.* 64 Cal. 463.)

VI. Instruction No. 5, given by the court, is a correct statement of the law. (*Mangam* v. *Brooklyn Ry. Co.* 38 N. Y.

455; 98 Am. Dec. 66; 1 Thompson on Negligence, 398; 2 Shearman & Redfield on Negligence, § 462; *Pope* v. *Kansas City etc. Ry. Co.* 99 Mo. 400; *Crew* v. *St. Louis etc. Ry. Co.* 20 Fed. Rep. 87.)

VII.   Under instruction No. 7 the jury must have found that plaintiff was not injured by the car being dropped back upon him, as they could not avoid doing under the testimony, as there is no testimony that he received any injury from that cause. (*Kennon* v. *Gilmer,* 5 Mont. 257; 51 Am. Dec. 45; *Deisen* v. *Chicago etc. Ry. Co.* 43 Minn. 454, 457.)

VIII.   A person crossing a street railway track is not required to exercise the same degree of care and caution as a person crossing a steam railroad track. (*Chicago City Ry. Co.* v. *Robinson,* 127 Ill. 10; 11 Am. St. Rep. 87; *Lyman* v. *Union Ry. Co.* 114 Mass. 83; 1 Thompson on Negligence, p. 396; *Adolph* v. *Central Park etc. R. R. Co.* 65 N. Y. 554.)

IX.   It was negligence *per se* for this car to be driven at a greater rate of speed than that allowed by the Helena City ordinance, to wit, six miles per hour. A person crossing a track has a right to assume that the ordinance will be obeyed. (*Correll* v. *B. C. R. & M. B. R. Co.* 38 Iowa, 120'; 18 Am. Dec. 22; *Robertson* v. *Wabash etc. Ry. Co.* 84 Mo. 119; 2 Shearman & Redfield on Negligence, § 484.)

BLAKE, C. J.—This is an appeal from the judgment and order of the court overruling the motion for a new trial. The judgment was entered on the verdict of the jury for the plaintiff for the sum of two thousand five hundred dollars, as damages for personal injuries alleged to have been sustained through the neglect of a servant of defendant, a street railway company.

The following facts appear to have been proved by a fair preponderance of testimony: About three o'clock in the afternoon of January 23, 1890, a car drawn by two horses was being driven on defendant's track to the south of Main Street, in the city of Helena. The driver was a boy about fifteen and a half years old, who lacked the strength needful for this employment, and was working temporarily in the place of another. At this time the horses were trotting at the rate of seven miles per hour, which was a violation of an ordinance

that prohibited such speed above the rate of six miles per hour. When the car approached the south crossing of Grand Street the plaintiff, a man thirty-one years old, attempted to go from the west to the east side of Main Street. Some cabs were standing on each side of the crossing near the west sidewalk, and a vehicle was also going south in advance of and between the plaintiff and the car, and his view was thereby obstructed. The plaintiff passed safely between the cabs, and in front of the horses attached to the vehicle, and partially over the railroad track, when he was struck in the breast by the pole of the car, and knocked down and dragged or pushed a distance of thirty or forty feet. A competent driver could have stopped the car, under these circumstances, within fifteen feet of the point of collision, and within a less distance if the rate of speed had been under six miles per hour. The time during which these events occurred was less than a minute. The plaintiff received severe and dangerous injuries after he was knocked down. While he was held or pressed between the scraper and the wheel, the bystanders raised the front end of the car to remove the plaintiff from his position, but were compelled by a movement of the horses to drop it before he was rescued.

What principles of law are applicable to a case of this nature? The appellant maintains that the plaintiff did not exert a proper degree of diligence, and was guilty of contributory negligence; that the driver performed promptly and faithfully all his tasks; and that his injuries complained of were caused by this act of the bystanders, for which the company was not responsible. During the trial a motion for a nonsuit was submitted and overruled. The questions raised by the appellant are embraced within the general rule that brings them within the province of a jury. In *Schierhold* v. *North Beach & M. R. R. Co.* 40 Cal. 447, the court said: "The fact of negligence is generally an inference from many facts and circumstances, all of which it is the province of the jury to find. . . . . It is not the duty of the court in such cases, any more than in any other, to usurp the province of the jury, and pass upon the facts; and the nonsuit could only be granted in such cases where the evidence of the misconduct on the part of the injured party is so clear and irresistible as to put the case

on a par with those cases where a nonsuit is granted for a failure to introduce evidence sufficient to go to the jury upon some point essential to the plaintiff's case."

In *Newcomb* v. *Boston Protective Department*, 146 Mass. 604; 4 Am. St. Rep. 354, the court said: "What is a contributing cause of an accident is usually a question for a jury, to be determined by the facts of the particular case; and such it has been held to be in many cases like the one before us." Other cases to this effect are cited in the above and the following authorities, which have been consulted in pursuing this investigation: *Jamison* v. *San Jose etc. R. R. Co.* 55 Cal. 593; *Franklin* v. *Southern Cal. etc. Road Co.* 85 Cal. 70; *Massoth* v. *Delaware etc. Canal Co.* 64 N. Y. 532; *McClain* v. *Brooklyn City R. R. Co.* 116 N. Y. 467; *Wells* v. *Railroad Co.* 12 N. Y. Supp. 67; *Langhoff* v. *Milwaukee etc. Ry. Co.* 19 Wis. 489.

What were the respective rights of appellant and respondent? In *Schierhold* v. *North Beach & M. R. R. Co. supra*, the court said: "The drivers of street cars, through a densely populated city, ought always to have their teams under their immediate and absolute control, and are bound to drive in such a manner, if possible, as to injure no one."

Messrs. Shearman and Redfield, in their treatise on Negligence, say: "But inasmuch as the injuries which are caused by a railroad car are more serious than those inflicted by most other vehicles, it seems that a greater degree of care should be required of car drivers than of most other drivers. They are bound to watch persons on the track, or approaching the same, and to stop in the shortest time possible, so as to avoid coming into collision with them." (Vol. 2 [4th ed.], § 462.)

In *Moebus* v. *Herrmann*, 108 N. Y. 352; 2 Am. St. Rep. 440, the court said: "A person on foot has, however, a right to cross the street where he pleases; and the inquiry is the same, whether, under the circumstances in any given case, he does so with due caution. . . . . The duty imposed upon a wayfarer at the crossing of a street by the track of a railroad, to look both ways, does not, as a matter of law, attach to such person when about to cross from one side to the other of a city street. The degree of caution he must exercise will be affected by the situation and surrounding circumstances. In the former case, there

is obvious and constantly impending danger, not easily or likely to be under the control of the engineer; in the latter, the vehicles are managed without difficulty, and injuries are infrequent."

In *Wright* v. *Malden etc. R. R. Co.* 4 Allen, 290, the court said: "The exception taken to the admission in evidence of the city ordinance regulating the rate of speed of the defendant's cars cannot be maintained. All persons traveling in the street would have a right to expect the ordinance to be observed, and to govern themselves accordingly."

In *Hanlon* v. *South Boston etc. R. R. Co.* 129 Mass. 311, the court said: "There was evidence that the car which struck the plaintiff was driven at a speed prohibited by an ordinance of the city; . . . . and the jury were told, that if they were satisfied that the rate of speed exceeded that allowed by the city ordinance, such violation of the ordinance would be evidence, but not conclusive evidence, of negligence." This instruction was approved, and the case was affirmed in *Newcomb* v. *Protective Department, supra.* These views are announced in other cases. (*St. Louis etc. R. R. Co.* v. *Dunn,* 78 Ill. 201; *Faber* v. *St. Paul etc. Ry. Co.* 29 Minn. 467; *Liddy* v. *St. Louis etc. R. R. Co.* 40 Mo. 520; *Keim* v. *Union Ry. & Transit Co.* 90 Mo. 321.)

The instructions of the court, which covered fully every issue, are in accord with the foregoing authorities. The jury were instructed that the plaintiff must prove the negligence of defendant by a preponderance of evidence, or he could not recover. A satisfactory definition was given of "negligence" and "contributory negligence." The fifth, sixth, and seventh instructions were as follows:—

"5. A man in attempting to cross a thoroughfare in a city is bound to exercise reasonable care and caution, so as to avoid injury; and, on the other hand, it is the duty of a street car company so to conduct its business and run its cars as to avoid, as far as practicable, by the exercise of ordinary prudence and caution, doing injury to pedestrians. The driver of a street car should keep safe control of his team, and his position should be such as to enable him to readily apply his brake. He should run at a reasonable rate of speed, and be vigilant in observing the track to the end that collisions may be avoided;

and it is the duty of a street railway company to employ servants who are fit and capable for the positions they are intrusted to fulfill.

"6. To entitle the plaintiff to recover in this suit, it must appear from the evidence that the injury complained of was occasioned by the want of attention, carelessness, or negligence on the part of the defendant or its servants, as charged in the complaint, and was not simply the result of an accident; and if the jury believe, from the evidence, that the injury resulted from an accident which could not have been foreseen or guarded against by the exercise of ordinary and reasonable care and prudence on the part of the defendant, then the plaintiff cannot recover, and the jury should find for the defendant.

"7. The rule of law is that a person is liable only for those consequences which flow naturally and directly from his acts, or which he could have foreseen or reasonably anticipated as the result of his conduct. Therefore, in this case, if the jury believe from the evidence that the plaintiff was struck down by the defendant's car, and that in endeavoring to extricate him therefrom the persons so endeavoring had the car slip from their hold, whereby the car fell upon the plaintiff, and so caused the injury complained of herein, then the defendant is not liable for such consequence, and the jury should find for the defendant. But if you find from the evidence that he was struck down by defendant, acting negligently, through its servant, as defined in these instructions, or if you find that the plaintiff was injured by defendant's negligence in not stopping its car sooner than it did after plaintiff was struck down, then the defendant would be liable in damages to plaintiff."

We have quoted these instructions because they express in a lucid and impartial style the law which should be applied to the evidence in the case. The jury decided by their verdict that the plaintiff used reasonable care and caution in trying to cross a public street upon this occasion; that the car was moving at a greater rate of speed than is allowed by the ordinance of the city of Helena; that the driver was not a suitable person; and that through the negligence of defendant the plaintiff had sustained serious injuries. We are of opinion that there was ample testimony to justify the conclusion of the jury.

It is ordered that the judgment and order overruling the motion for a new trial be affirmed.

HARWOOD, J., concurs.

DE WITT, J. (*dissenting*). — This action is for damages sustained by plaintiff, alleged to be caused by defendant negligently striking plaintiff with its horses and street car, throwing him upon the ground, running against him with the car, and dragging him upon the frozen ground. Plaintiff had verdict and judgment for two thousand five hundred dollars. A motion for a new trial was denied. From this order and the judgment the defendant appeals. I will state the facts and discuss the law together.

The plaintiff undertook to cross Main Street, from west to east, in the city of Helena, about 2:30 P. M. Defendant's street car was coming up the street, and up a slight grade — about a water grade — going south. The car was running at about seven miles per hour. On the west side of the car was another vehicle, going in the same direction. The evidence is uncertain whether it was a baggage wagon or a hack. I will call it a baggage wagon for the sake of description. When the accident occurred the baggage wagon horses were in advance of the car horses, about six or eight feet, and between the baggage wagon and the car was a space of about three feet. There is some evidence that, at the same time, another vehicle, called by one of the witnesses a " Democrat wagon," was passing north, on the east side of the street and about opposite the baggage wagon. This is the testimony of one Arlington, a hack driver, who was sitting on the seat of his hack, which was standing on the side of the street. His opportunity for observation was as good as, if not better, than that of any of the witnesses. Other witnesses testified as to the presence of this Democrat wagon. Others did not see it. But all agree as to the baggage wagon going south on the west side. Plaintiff passed in front of the baggage wagon, and directly onto the car track. He passed rapidly before the baggage wagon. One witness says he jumped over or ran over in front of it. Plaintiff himself says: "I had plenty of time, I thought, and passed

right in front of it; and it was going pretty fast, and I stepped quick and cleared it, as I expected." The evidence is clear that it was quick work for the plaintiff to pass the baggage wagon. He accomplished it, but he was obliged to be quick. Having cleared the baggage wagon, he was upon the car track with the car horses close upon him. When he passed the horses of the baggage wagon, he had just about as far to go to the middle of the track as the car horses had to reach the same point, which was the point of collision, and which point man and horses reached at about the same instant. Whether the Democrat wagon was beyond the car track, and obstructed plaintiff's further passage across the street, is not an admitted fact. Arlington, the hack driver, testifies that the Democrat wagon was in that position, and that its driver shouted to plaintiff, and plaintiff pulled his foot back, and the pole of the car struck him; but this is not supported by the testimony of the witnesses generally. But, in any event, this is conceded, that the plaintiff had to be very quick to clear the baggage wagon, and that then the car horses were very close to him. The plaintiff says: "At the same time I saw the car, and I was trying to clear it, to make a jump to get onto the other side, and saw that the car was onto me." He said that he noticed that the horse on the further side "raised," as he calls it. He saw the car and turned, and they were right onto him. It is a fair statement of the evidence that, when the plaintiff had quickly cleared the baggage wagon, he was directly before the car horses, and that, as he himself describes it, they were right onto him — so close, indeed, that he then tried to save himself by endeavoring to seize the pole of the car. One witness says that the east side horse struck him, and then the pole struck him. But the great majority of the testimony is that the pole struck him first. The end of the pole rode about three feet from the ground when the car was being pulled by the horses. The pole struck plaintiff about as high as the armpits. The plaintiff was about five feet ten inches in height. One witness explains the reason why the man was struck so high, upon the supposition that the driver checked the horses, which raised the pole. When plaintiff was struck, he went down upon the ground. It seems that the horses jumped over him. The plaintiff was

then down upon the east rail.  That side of the car then came up to him.  In front of the wheel was a snow-scraper.  The scraper, when in use, rode close to the rail.  When raised, it was four inches above the rail.  The portion of the car where the snow-scraper was placed came against plaintiff, and he was shoved upon the ground for some distance.  When extricated, he was found between the snow-scraper and the wheel.  He was severely injured.  The street on which the accident occurred was a thoroughfare.  The time was the middle of the afternoon.  There were a considerable number of vehicles on the street.  The plaintiff saw the baggage wagon coming up. He says that it was smaller than the car.  His recollection is that it was a carriage with the top partly down.  He says that, if he had been looking in that direction, he does not know whether he would have seen the car or not.  He says: "It seems to me as if I could have seen it if it were just the other side, but I think it was further back.  It seems to me as if I could have seen it."  The testimony of the other witnesses is that the car horses were six or eight feet back of the baggage wagon horses.  Then the car must have been just the other side of the wagon.  Plaintiff further says: "I did not notice the car until I got by the carriage.  I think I might have seen the car from the sidewalk if I had looked."  That he could have seen it, if he had looked, is apparent from the conceded fact that it was larger than the wagon or carriage, as plaintiff calls the vehicle.

There is a great amount of testimony as to how quickly a horse car could be stopped.  The minimum testified to was eight feet with a dry rail, and all the conditions favorable. The evidence is conflicting as to whether the rail was dry or wet.  The testimony is voluminous as to whether, by the exercise of due care, the car could have been stopped in time to prevent shoving the plaintiff on the ground.  But that portion of the evidence as to shoving plaintiff, I shall not consider at this moment.

For the purpose of applying the law, as I conceive it to be, to the facts, the accident is divisible into two periods: (1) The knocking down of plaintiff; and (2) the shoving him in front of the car.  The facts as to the first period I have fully stated, and will now consider them in connection with the law.

It is urged by appellant that plaintiff, by his own contributory negligence, put himself into a dangerous position, and is therefore precluded from recovering. There is some diversity among courts of last resort as to whether contributory negligence is a matter of defense, or whether plaintiff should allege and prove himself to be free from such contributory negligence. But that question has been long at rest in this court. It is the doctrine of this jurisdiction that contributory negligence is a matter of defense, and that plaintiff need not allege or prove its absence. (*Higley* v. *Gilmer*, 3 Mont. 97; 35 Am. Rep. 450.) My examination of the decisions and the text-writers leads me to the opinion, with deference to the distinguished courts that have held the contrary doctrine, that this court, in this respect, is with the majority of opinion and adjudication.

But there is a modification of this rule, or perhaps rather a corollary thereto, which is not inconsistent with the general principle. In *Kennon* v. *Gilmer*, 4 Mont. 433, the action was for damages for injuries occurring in a stage-coach accident. The complaint set forth negligence in defendant in not providing suitable and safe horses and a competent driver, by reason of which the horses became unmanageable, "one of the same jumping and throwing itself on the pole of the coach, thereby breaking the same, was thrown and placed in such a condition as to imperil the safety of plaintiff. So far the complaint sets forth a state of facts upon which the plaintiff could have relied if the injury complained of had happened. But it will be observed that this was not the case. The complaint continues: 'And to render it apparently unsafe for plaintiff to longer remain on said coach; that he, being actuated by just fear of bodily injury by longer remaining thereon, jumped from said coach, and, in so doing, one of plaintiff's legs was fractured, bruised, broken,' etc. Thus the plaintiff declares that the proximate cause of the injury he sustained was his own action. . . . . We think this the true rule, and that plaintiff, having asserted that the proximate cause of his injury was from his own act, he should then be held to prove that in thus acting he did exercise that degree of care and prudence that a reasonable person would have done in like circumstances. This is nowhere stated in the complaint, and we are left to conjecture as to that

important factor in the cause. . . . . The complaint did not state a cause of action, and defendants' demurrer thereto should have been sustained by the court." (pp. 452, 453 of the opinion, 4 Mont.)

The ruling in *Kennon* v. *Gilmer* was made upon a demurrer to the complaint. In the case at bar the question arises upon the evidence. Appellant contends that it is the rule that if it appears from plaintiff's evidence that the injury was proximately brought about by plaintiff's act or contributory negligence, then the burden of proving contributory negligence is shifted from defendant, and plaintiff must show himself to be free from such contributory negligence. If the doctrine of *Kennon* v. *Gilmer* is correct, the appellant's conclusion necessarily flows therefrom; for if a complaint would be defective in not alleging plaintiff's due care, after it had alleged that his own act was the proximate cause of the accident, then, on the same principle, if plaintiff's evidence showed that his own act was the proximate cause of the injury, or if his evidence, as he presented it, showed that his contributory negligence was the cause of the injury, then he must be held to prove that he exercised due care, or that his seeming contributory negligence was not such in fact.

As the opinion in *Kennon* v. *Gilmer* gives but a meager citation of authorities, and the question is of importance, I will notice the decided cases more at length than they appear in that decision.

Mr. Beach, in his work on Contributory Negligence, says (§ 157) that it is a rule that contributory negligence is a matter of defense in the States of Alabama, California, Georgia, Kentucky, Kansas, Maryland, Minnesota, Missouri, New Hampshire, New Jersey, Nebraska, Ohio, Pennsylvania, Rhode Island, South Carolina, Texas, Wisconsin, West Virginia, Vermont, and Colorado, and in England and the United States Supreme Court. To this list, Shearman and Redfield add Arizona, Oregon, and the Territory of Dakota. As above noticed, Montana belongs in the same category. Mr. Beach further remarks: "But in all those jurisdictions where contributory negligence is held a matter of defense, whenever the plaintiff's own case raises a presumption of contributory negli-

gence the burden of proof is immediately upon him.   In such a case it devolves upon the plaintiff, as of course, to clear himself of the suspicion of negligence that he has himself created.   He must make out his case in full, and where the circumstances attending the injury were such as to raise a presumption against him, in respect of the exercise of due care, the law requires him to establish affirmatively his freedom from contributory fault. And where the plaintiff's case, on the face of it, shows contributory negligence, there should be a nonsuit; but, if there be any real question as to the plaintiff's negligence, he should not be nonsuited, but the question is for the jury."

Mr. Thompson, in his work on Negligence, says: "In those States where the doctrine obtains that contributory negligence on the part of the plaintiff is a matter of defense, if his case raises an inference of negligence on his part, he must, in order to make out a *prima facie* case, show that he was guilty of no negligence. (Vol. 2, p. 1178.)   These remarks Mr. Lawson, in his work on Rights and Remedies, cites with approval. (Vol. 3, p. 2144.)   To the same effect are Shearman & Redfield on Negligence, § 108, et seq.   These authorities cite voluminously from the States named.   Appellant has placed in his brief a large number of authorities, which I have examined with interest, and to which I refer, without reciting them at this place.

I do not cite from the few courts holding the doctrine of comparative negligence, which doctrine has obtained but a slight footing outside of the Supreme Court of Illinois, where it originated, nor from the courts that have held that the absence of contributory negligence is a matter of proof for the plaintiff; for the cases from these courts stand upon a theory of the matter other than that adopted in *Higley* v. *Gilmer, supra.*

But the States that have held the doctrine that we do, that contributory negligence is a matter of defense, have also held that if the plaintiff's case, as he presents it, raises a legitimate presumption that the contributory negligence of plaintiff was the proximate cause of the injury, he must establish his freedom from such appearing contributory negligence, or he has not made out his case.

And logic and reason are with the authorities; for, if con-

tributory negligence is a matter of defense, then, if it were proved in defense, plaintiff could controvert it in rebuttal. But if plaintiff, in his opening evidence, saves the defendant this burden, if plaintiff supplies the evidence of contributory negligence, or the legitimate presumption of it, he has relieved defendant, and furnished that evidence which defendant otherwise should furnish, if he desired to make it a matter of defense. Then, plaintiff having so furnished an element of defendant's defense, plaintiff, by the logic of the situation, has placed himself where defendant would have placed him if defendant had supplied this evidence in defense. Therefore, plaintiff having furnished in evidence the material of defendant's defense, plaintiff in the opening of the case has placed himself where he would be upon rebuttal if he had waited for defendant to supply this defense in his evidence, and therefore plaintiff, in opening, must do what he otherwise would do on rebuttal — that is, overcome the evidence or presumption of contributory negligence; otherwise, he has not made out his case.

Now as to the facts of the case at bar, considering first only what I have called the " first period" of the accident, the knocking down of the plaintiff, which I have described above. Was the proximate cause of the accident, in this respect, the negligence of defendant, or the act of plaintiff?

There is much evidence as to the possibility of stopping the car. The shortest distance given is eight feet, with a dry rail and all the conditions favorable. Whether the rail was wet or dry is not certain. But when the plaintiff first saw the horses and the car the horses were right onto him. This was when he was first seen by the driver, when he jumped out from in front of the baggage wagon horses. It does not appear that the driver could have seen him before this time. The driver stood upon the platform of the car. If plaintiff could have seen the car beyond the baggage wagon, as it appears he could, he would have seen the top part of the car. But the driver was not on top, but down on the platform; and, because plaintiff could have seen the top of the car, it does not follow that the driver, down on the platform, could have seen the plaintiff. The ordinance of the city forbade driving a street car faster than six miles per hour. The evidence on behalf of plaint-

iff is that the car was moving at the rate of seven miles per hour. Respondent contends that this was negligence *per se*. But, even if defendant be negligent, he is not liable unless such negligence is the cause of injury. With all the evidence in the case as to the possibility of stopping the car, there is no evidence that even if the car were going at the rate of six miles per hour, and if all the appliances for stopping were used quickly and effectually by a skilled and strong driver, the car could have been stopped soon enough to avoid striking the plaintiff with the pole. It is suggested that if the car had been running at six miles per hour instead of seven, it would have reached the point of collision so much later that plaintiff would have escaped. But the car horses had only six or eight feet to go to come even with the baggage wagon horses, from before which plaintiff appeared upon the car track. To run this distance at the rate of six miles per hour would require one fifteenth of a second more of time than to run it at seven miles per hour, the rate at which the car was traveling. This difference in time, too inappreciable for the senses to measure, is too insignificant to have had any effect upon the result. That some check was put upon the motion of the car is apparent from the fact that the forward end of the pole was thrown up at the moment of striking plaintiff. I cannot discover, considering his acts and position, that, in the knocking down of plaintiff, any negligence of defendant was the cause of that misfortune; for there is not evidence that anything could have been done, under the circumstances, to prevent the knockdown, whatever may have been the facts in reference to the possibility of preventing the shoving of plaintiff before the car, which occurred after the knockdown.

So much for the acts of defendant. Now as to the act of plaintiff. He crossed rapidly, or ran or jumped in front of a rapidly moving vehicle running parallel with the car. He says that he did not see the car. But he says that he did not look. He says that he thinks that he could have seen the car if he had looked, and that the car was larger than the intervening vehicle. If this is true, he could have seen the car if he had looked. The day was clear. Plaintiff was in the possession of his senses. He was upon a city thoroughfare.

I am fully aware that negligence of the defendant or contributory negligence of the plaintiff is a matter for the jury, unless the evidence is such as to leave the matter clear and undisputed to persons of fair and sound minds. It is needless to cite authorities. Their name is legion. They are collected in the citations above made. I find their tenor to be that, if the question of negligence or contributory negligence is a fairly disputed question of fact, it must be resolved by the jury, but that if the evidence is perfectly clear the matter is for the court; and by "perfectly clear," the authorities say, is meant, not perfectly clear in the view of the particular court or persons composing the court which is reviewing the matter, but rather in the judgment of reasonable men of sound minds. That is, if different conclusions might be drawn by different men of fair, sound minds, then the matter must go to the jury; but if only one conclusion can be reached by men of fair, sound minds, the determination is for the court. This seems to be a settled doctrine, and with it I fully concur. But is it not, practically, somewhat illusive? For the court must determine what would be the judgment of men of fair, sound minds; and to arrive at that determination, the court must use its own sense and knowledge and judgment. And as long as courts are composed of finite men, with minds not all cast in the same mold, we cannot but expect some diversity of views in the application of the doctrine to particular facts. This may account for the confusion in the reported cases, and the fact that decisions may be produced, sustaining either side of a contention of this nature which is at all close. And the contention before us is not wholly free from perplexity. But in consideration of all the evidence and circumstances detailed, I am of opinion that it does not appear that any act of defendant was the proximate cause of the accident, but, on the contrary, that the act of the plaintiff, in crossing the street as he did, in view of all the facts, was the proximate cause of his being knocked down, and that, his said act being such proximate cause, he did not show due care in the performance of that act.

Defendant moved for a nonsuit, which motion was denied. The motion was upon the ground "that the testimony introduced in behalf of the plaintiff shows that the accident or injury

complained of herein is attributable solely to the contributory negligence of the plaintiff himself."

If the accident had consisted simply in knocking plaintiff down, as above described, and under the circumstances detailed, and had stopped at that point, I should be of opinion that on such evidence, and the lack of evidence of care by plaintiff, the motion should have been granted. But that was not the end of the accident. The "second period," as I have called it, was the shoving of plaintiff before the snow-scraper and wheel of the car. After plaintiff came against the snow-scraper, it cannot be contended that he was guilty of any contributory negligence as to what thereafter occurred, or that any act of his after he was down caused him to be shoved on the track, whereas it was contended by plaintiff in his evidence, on the trial, that even if there were no evidence that defendant's negligence was the cause of the original striking down of plaintiff, and even if the cause of his being struck down was his own act, yet that by the exercise of due care and skill, and the strength of a competent driver, the car could have been stopped, if not in time to prevent striking plaintiff, yet in time to avoid shoving him over the ground. On this point the evidence was extensive. In fact the evidence as to the possibility of stopping the car was upon this point, and not upon the question of stopping in time to avoid the knockdown.

Upon the question whether defendant's alleged carelessness and negligence caused plaintiff to be so shoved on the ground, I am of opinion that the evidence, as it stood, was sufficient to go to the jury. It is not necessary to review it. I have examined it carefully. I say nothing as to its weight, but I cannot hold that it is perfectly clear that there was no negligence of the defendant in this respect; and if not so perfectly clear, as I have discussed this question above, the matter was for the jury, and should not have been taken from the jury by the granting of a motion for nonsuit, as appellant insists should have been done. Appellant's contention as to the law of contributory negligence in this respect goes to an extreme. Carried to its legitimate conclusion, it is this: That if the inception of an accident is by the plaintiff's own act or contributory negligence, then the defendant is freed from all exercise of care, from all

responsibility to plaintiff, and that he may be as reckless as he pleases, and may mutilate and destroy at his own will.    That is to say, applying his contention to the case at bar, if plaintiff's own act was the cause of his being knocked down, then defendant's after-occurring negligence (if any there were), in shoving him upon the track and ground, did not create any liability to plaintiff.    Appellant's authorities cited do not sustain any such doctrine, nor have I observed cases to that effect.    An interesting case was presented to the Supreme Court of Maryland in *Northern Cent. Ry. Co.* v. *State,* 29 Md. 420 ; 96 Am. Dec. 545. A person was struck by a railroad train.    Upon stopping the train, after the accident, the man was found upon the pilot of the locomotive, helpless, and apparently dead.    The employees of the railroad company, without summoning a physician or carefully examining the man, put him into a warehouse alone, and locked him up over night.    " On opening the warehouse in the morning, he was found to have come to life during the night and to have afterwards died of hemorrhage of an artery which had been severed by the collision."    The position of the counsel for the railroad company in that case was very much the same as I understand appellant's to be in this case.    Their brief says (p. 427 of the Report): "No principle of law is better settled than that if the negligence or want of care of the deceased in any way contributed to cause the collision which resulted in his death, the plaintiff is not entitled to recover."    A defense was the contributory negligence of plaintiff in getting upon the railroad track.    The court said (p. 441) :  " We are next brought to the question whether the defendant be liable for the negligence of its agents in their treatment and disposition of the deceased subsequent to the collision.    This we think free from doubt or difficulty.    From whatever cause the collision occurred, after the train was stopped  . . . . it thereupon at once became the duty of the agents in charge of the train to remove him, and to do it with a proper regard to his safety and the laws of humanity ; and if in removing and locking up the unfortunate man, though apparently dead, negligence was committed, whereby the death was caused, there is no principle of reason or justice upon which the defendant can be exonerated from responsibility."    The court further say : "The fourth

prayer [which is what we would call a request for an instruction] was also erroneous, for the reason that it sought to exclude from the consideration of the jury all the evidence relative to the conduct of the defendant's agents towards the deceased, subsequent to the collision." This case is cited with approval in *Inland etc. Coasting Co.* v. *Tolson,* 139 U. S. 551.

The Supreme Court of Illinois said, in *Chicago etc. R. R. Co.* v. *Still,* 19 Ill. 499; 71 Am. Dec. 236: "Neither has the right, because the other has omitted to use care, to cease the use of efforts on his part to avoid occasioning injury to the other. That would be to permit the party guilty of the first negligence to be wantonly killed by the other party."

These cases put the doctrine strongly, and the Maryland case upon an aggravated state of facts, but the doctrine is correct. Shearman and Redfield on Negligence, section 99, remark, in discussing the leading case of *Davies* v. *Mann,* 10 Mees. & W. 546, and the cases which have reviewed that case: "It is now perfectly well settled that the plaintiff may recover damages for an injury caused by the defendant's negligence, notwithstanding the plaintiff's own negligence exposed him to the risk of injury, if such injury was proximately caused by the defendant's omission, after becoming aware of the plaintiff's danger, to use ordinary care for the purpose of avoiding injury to him. We know of no court of last resort in which this rule is any longer disputed." (See, also, 2 Thompson on Negligence, p. 1157, n. 8, and 4 Am. & Eng. Encycl. of Law, p. 75, n. 2.) These authors cite innumerable decisions, and my examination of the authorities leads me to conclude that their text is fully sustained. See, also, cases cited in respondent's brief (paragraphs 2, 3, and 4), in all of which, wherein the principle under discussion is considered, the views above expressed are sustained.

The authorities cited by appellant are not in conflict with the views above expressed.

The doctrine of the law, as I am enabled to understand it, is that, although the inception of the accident was attributable to plaintiff's own act or contributory negligence, yet if after-occurring negligence of the defendant, independent of the inception of the accident, works an injury to plaintiff, and if plaintiff's acts after the initiation of the accident do not contribute to the

after-occurring injury, then defendant is liable.   That is, even after .an accident is initiated by plaintiff's contributory negligence, the duty rests upon defendant to so conduct himself that no greater injury shall occur than that which naturally flows from such initiatory negligence of plaintiff.   There are, of course, cases where the accident is not divisible, as in the case at bar; where all that occurs, occurs at once, and where the doctrine of after-occurring negligence would not apply, as in the case at bar.   Therefore, if the accident in the case at bar had come to an end at what I have called its "first period," the plaintiff should have been nonsuited.   But it did not so end. The evidence of facts in the second period did not warrant the court in withdrawing the case from the jury, and the nonsuit was therefore properly denied.

But I am of opinion that the court did commit error in the instructions by which the case was submitted to the jury.   The court said, in instruction No. 3, among other things: "The burden of proving contributory negligence in this case rests upon the defendant," and in instruction No. 7: "If you find from the evidence that he (plaintiff) was struck down by defendant, acting negligently, through its servant, as defined in these instructions, or if you find that the plaintiff was injured by defendant's negligence in not stopping its car sooner than it did after plaintiff was struck down, then the defendant would be liable in damages to the plaintiff," and in instruction No. 1: "If you find from the evidence that the plaintiff may have contributed, and did contribute, to the injuries he received, by attempting to cross the street," etc.   But, as I have above observed, the burden of proving contributory negligence as to the first period of the accident was not upon the defendant, and the portion of instruction 3 quoted was therefore error.

And when we notice the portions of instructions 1 and 7 quoted, and the instructions as a whole, we observe that the court thereby submitted to the jury the whole facts of the accident — both the knocking down of the plaintiff, and the injuries alleged to have been caused thereby, and also the shoving him before the car.   It was thus left to the jury to determine whether the defendant negligently knocked plaintiff down, and thereby injured him, as well as whether it injured him by

negligence operating after the knockdown. The submission of this first matter to the jury, it is apparent from what I have said, I am of opinion was error. It was submitting to the jury that which the court should have decided.

The case should have been submitted to the jury by excluding from their consideration, as an element of their verdict, the alleged negligence and injury occurring in striking down the plaintiff. Evidence of all these facts was of course competent in the case as part of the *res gestœ,* but was not matter to be considered by the jury, either as an element to determine whether plaintiff was negligently injured by defendant, or to determine the amount of the damages to which he was entitled, if any. All these matters the jury considered; that is to say, they were left to them for consideration; and it is impossible to know how much weight there was with the jury of the matter which was improperly submitted to them. The subject should have been controlled by appropriate instructions.

In accordance with these views, I am of opinion that the order denying the new trial and the judgment should be reversed and the case remanded, with directions to the District Court to grant a new trial.