HUNTER ET AL., APPELLANTS, *v.* MONTANA CENTRAL RAILWAY CO., RESPONDENT.

[No. 1,097.]

[Submitted April 24, 1899. Decided May 15, 1899.]

*Railroads—Evidence—Amendment—Harmless Error—Negligence—Contributory Negligence—Burden of Proof.*

1. There is no error in excluding a question where witness has already answered a similar one.
2. Error in permitting amendment to conform to proof was harmless, where the original pleading was broad enough to cover the proof.

3. The evidence conflicting as to whether a whistle was blown and bell rung on a train's approaching a crossing, the court properly assumed that signals were not given in directing verdict for the company because of plaintiff's contributory negligence.

4. Under Civil Code, Sec. 908, making it a misdemeanor for a railroad to permit its trains to approach a crossing without sounding the whistle and ringing the bell, such action is negligence.

5. Deceased, killed at a railroad crossing, and two of his companions, lived near the crossing, and, with the driver, were familiar with it. The driver passed it frequently; once before, that day. He was an experienced driver, and his team was gentle. They knew that vision of the track and approaching trains was obstructed to within 45 feet of the track, and that they could not turn out at that point. They trotted their team to within 30 feet of the track, on a dark night, before they noticed a train which was then upon them. They had neither stopped, looked, nor listened. *Held*, that action would not lie against the company, notwithstanding it failed to ring a bell and blow a whistle.

6. Where plaintiff's evidence raises a presumption of contributory negligence, the burden is on him to remove it; and hence a finding of contributory negligence may be justified, though defendants offer no proof.

*Appeal from District Court, Lewis and Clarke County; Henry N. Blake, Judge.*

Action by Herbert Hunter and others against the Montana Central Railway Company. There was a judgment for defendant, and plaintiffs appeal. Affirmed.

Statement of the case by the Justice delivering the opinion.

Action by the heirs of Henry N. Hunter for damages for injuries resulting in his death. The accident in which the injuries were received occurred in Jefferson county, at a crossing of a public highway leading from Lump City to Hartford over the defendant's road at or near the latter place.

On January 13, 1896, at about 8 o'clock in the evening, the deceased, Hunter, with three companions, John Wallace, Kay Reed and T. J. Chestnut, were driving eastward from Lump City to Hartford in a surrey. The conveyance belonged to Wallace, who sat on the right in front, and was driving. Chestnut sat beside him. Reed and Hunter sat in the rear seat, Reed occupying the right. The three last mentioned had engaged Wallace at Lump City to drive them to Hartford. Wallace and Reed resided at Lump City. Hunter's home was at Clancy. Hartford and Clancy are stations on the railroad. Lump City lies off to the west. All are in the same vicinity. The evening was cold and dark, but quiet.

There was no moon. The road was "pretty rough." All
the party had lap robes, but none wore mufflers. All of them
were familiar with the crossing, except Chestnut, who was a
stranger. The railroad in the vicinity of the crossing runs
north and south. On the south of the highway were willow
bushes extending along the line of the railroad, and about 45
feet therefrom. These somewhat obscured the view of the
persons approaching on the highway from the west until
within about this latter distance, but from this point an ap-
proaching train can be plainly seen for about 200 feet towards
the south. At 60 feet from the crossing is a bridge. From
this bridge the road descends gently for a distance, and then
ascends in the same way to reach the grade of the railroad.
This part of the highway is a narrow turnpike, with a ditch
on either side, so narrow that the team could not be turned.
Wallace, the driver, was a livery man; was in the habit of
driving over this road often; had driven over it at least once
before on that day. His team was not "much afraid of
trains," and on this occasion manifested no fear. The party
had been driving "pretty fast" all the way. Wallace says
they had been trotting "right along," but he thought he had
"slowed them up to a walk at the bridge." The vehicle
made a good deal of noise. A party of young people had a
fire about 250 feet west of the track and about 50 feet north
of the highway, and were engaged in skating. Reed hailed
this party as he and his companions came up. Further than
this, none of the party spoke until they saw the train ap-
proaching from the south, when Reed hallooed to Wallace "to
get there," and Wallace put the horses over. The train was
observed by Chestnut and Reed while the team was still some
45 feet from the track. Wallace saw it while they were 20
to 30 feet away. He says he first checked the team, and then
whipped up and put the horses over. The train consisted of
an engine and caboose. The grade of the railroad was down-
ward towards the north, and the train was drifting at from
20 to 25 miles an hour. The carriage cleared the engine by
from four to six feet, and got safely over. Hunter left the

carriage as it went over, was struck by the engine, and so badly injured that he died within an hour. The record is somewhat obscure as to how he got out of the carriage. Chestnut says that as they crossed the track Hunter was sitting behind him; that he looked back to see how they were making it, and saw him. Wallace says that after they went over he heard Reed say that Hunter had jumped out. Reed says that, as they cleared the track, his attention was fixed upon the train; that he heard Hunter "fussing" behind him, and that upon turning he found him gone. All the party were sober. The carriage was open at the sides. We are therefore left to the inference that, in the excitement of the moment, Hunter jumped in an effort to save himself from an expected collision.

Members of the skating party saw the light of the approaching train at a distance of half a mile, and also heard its rumble. They were expecting a party up by the train from Clancy, a few miles away. Chestnut, Wallace and Reed all testified that, after they saw the train, their only chance to escape collision was to whip up and cross over. There is a conflict in the evidence as to whether the headlight was burning, and also as to whether the whistle was sounded or the bell rung as the train approached the crossing. There is no conflict as to the other facts stated. They all appear from plaintiff's proof.

When the evidence was all in, the defendant asked the court for leave to amend its answer by alleging affirmatively that Hunter and the driver of the team both omitted to look or listen for the approaching train, and to take any care or precaution to avoid collision with it until too late. The defendant at the same time moved the court to direct the jury to render a verdict in its favor. The court granted both requests, and thereupon, after the answer was formally amended, under the direction of the court the jury rendered a verdict for defendant. Judgment was thereupon entered for defendant. From this judgment, and an order denying their motion for a new trial, plaintiffs appeal.

*Walsh & Newman,* for Appellants.

A failure to comply with Section 908 is negligence.  (*Texas A. P. Ry. Co.* v. *Nelson,* 29 S. W. 78; *Missouri P. Ry. Co.* v. *Lee,* 7 S. W. 857, 70 Tex. 496; *Gulf Ry. Co.* v. *Anderson,* 13 S. W. 196; *Cahill* v. *Cincinnati N. O. & T. P. Ry. Co.,* 18 S. W. 2; *Ransom* v. *C. M. St. P. Ry. Co.,* 22 N. W. 147, 62 Wis. 178; *Pittburg Ch. & St. L. Ry.* v. *Burton,* 37 N. E. 150.)   It is also a penal offense.  (Penal Code, Secs. 689-692; *Lonergren* v. *Ill. Cent. Ry. Co.,* 49 N. W. 852; *Klanowski* v. *Grand Trunk Ry. Co.,* 24 N. W. 801, 57 Wis. 525; *Pollock* v. *Ry. Co.,* 124 Mass. 158; *1 Thompson* v. *Negleyan,* 507; *Bitner* v. *Utah Cent. Ry Co.,* 11 Pac. 620.) It is the settled law of this State that contributory negligence is a matter of defense, which the defendant must plead and prove.  (*Nelson* v. *City of Helena,* 16 Mont. 21; *Higley* v. *Gilmer,* 3 Mont. 97; *Wall* v. *City of Helena,* 12 Mont. 44; *Melville* v. *Pac. Mut. L. Ins. Co.,* 47 Pac. 650, 19 Mont.) Contributory negligence is a question of fact for the jury, and not of law for the court.  (*Hayes* v. *Mich. Cent. Ry. Co.,* 111 U. S. 228; *Rollins* v. *Fitchburg R. Co.,* 36 N. E. 752; *Railroad Co* v. *Stewart,* 17 Wall. 657; *Osborne* v. *Detroit,* 32 Fed. 36; *Atchison T. St. F. R. Co.* v. *Hague,* 38 Pac. 257; *Romick* v. *C. R. I. & P. R. Co.,* 62 Ia. 167, 17 N. W. 458; *Greany* v. *Long Island R. Co.,* 101 N. Y. 419; *Lynch* v. *N. P. R. Co.,* 69 Fed. 86, C. C. S.; *Western A. R. Co.* v. *Roberson,* 61 Fed. 592, C. C. S.; *Chicago R. I. & P. Ry. Co.* v. *Sharp,* 63 Fed. 532, C. C. S.; *Smith* v. *Baltimore & O. R. Co.,* 27 Atl. 847.)   The deceased and the driver were not guilty of negligence.   They had a right to expect that the laws would be obeyed by the defendant.  (*Wall* v. *City of Helena,* 12 Mont. 51; *Wright* v. *Ry. Co.,* 4 Allen, 290; *Pillsbury Ry. Co.* v. *Burton,* 37 N. E. 150; *Cahill* v. *Cincinnati N. O. & T. P. Ry. Co.,* 18 S. W. 2.

*A. J. Shores,* for Respondent.

**BRANTLY, C. J.**—1.   Plaintiffs except to the ruling of the

court in refusing to permit the witness Reed to answer the
question, "What have you to say as to whether or not, under
the circumstances, it was the best thing to do?"   The purpose
of the question was to draw out the opinion of the witness as
to the propriety of putting the team over in front of the train.
There was no error in this ruling.   This witness had already
stated that, in his opinion, this was the only thing to do to
avoid a collision.   Wallace and Chestnut also testified to the
same effect.   Nothing was to be gained by a repetition.

2.   The answer of the defendant, as it was originally made,
contained allegations of contributory negligence on the part
of Hunter (the deceased) and his companions broad enough to
cover the matter alleged in the amendment.   The amendment
was, therefore, immaterial; but the error in permitting it to
be filed resulted in no prejudice to the plaintiffs.   The judg-
ment cannot be reversed on this account.

3.   The gravest question presented .by this appeal is predi-
cated upon the action of the trial court in directing a verdict
for the defendant.   The Civil Code (Section 908) provides that
any railroad corporation in this State which "shall permit any
locomotive to approach any highway, road or railroad cross-
ing, without causing the whistle to be sounded, at a point be-
tween fifty and eighty rods from the crossing, and the bell to
be rung from said point until the crossing is reached, * *
* shall be deemed guilty of a misdemeanor," etc.   As to
whether the required warning of the approach of the train was
given on the evening in question there was sharp conflict in
the evidence.   The court, in directing the verdict for the de-
fendant, assumed that none was given.   The jury were told
that the defendant had been guilty of negligence in its failure
to do this (the court holding, on this issue, for the plaintiffs),
but that Hunter, the deceased, and Wallace, the driver, had
been guilty of contributory negligence in failing to "stop,
look, or listen for an approaching train;" and that, therefore,
defendant was entitled to a verdict.   This assumption was cor-
rectly made; for the court could not pass upon the credibility
of the witnesses, and, as the proof tended to establish this fact,

it was assumed as proven.　The legal conclusion drawn from the fact thus assumed to be proven was also the correct one. The failure on the part of a railroad company to observe these precautions enjoined by statute is negligence. (Elliott on Railroads, Sec. 711; Beach on Contrib. Neg. Secs. 185, 186; *Missouri Pac. Railway Co.* v. *Lee*, 70 Tex. 496, 7 S. W. 857; *Harty* v. *Central Railroad Co.*, 42 N. Y. 468; *Ransom* v. *C. St. P. Railway Co.*, 62 Wis. 178, 22 N. W. 147; *Pittsburg C. C. St. L. Railway Co.* v. *Burton*, 139 Ind. 357, 37 N. E. 150; 1 Thompson on Neg. p. 419.)　This is the general rule. And, even where there is no statutory requirement upon the subject, it is held that it is still the duty of the company to use such care and precaution upon approaching a crossing, and to give such signals as, at least, ordinary prudence and diligence would require.　(*Harty* v. *Central Railroad Co. supra*; 1 Thompson on Neg. p. 419; *Louisville & N. R. Co.* v. *Com.*, 13 Bush. 388, s. c. 26 Am. Rep. 205; Beach on Contrib. Neg. Sec. 186.)

These requirements are for the benefit of the public, and persons traveling upon the public highways have a right to expect a compliance on the part of the railroad company.　But failure of obedience on the part of the railroad company to the requirements of the statute does not excuse the citizen from the use of at least ordinary diligence and prudence; so that if one, upon approaching a railroad crossing intending to pass over it, fails to make a vigilant use of his senses,—that is, to look or listen, and to stop for this purpose, if necessary, to learn if there is danger,—and by reason of this failure to exercise this precaution he is injured, then he contributes directly to such injury, and cannot be heard to say that the railroad company did him the injury, and should compensate him for its wrong.　The injury in such case is attributable to the recklessness and want of care in the person himself; for if he had performed the duty he owed himself, and taken the necessary precaution, he would not have been injured.　The amount of care to be exercised depends somewhat upon the special circumstances of each case.　In general, the more ob-

structed the view, and the narrower and more difficult the crossing, the greater is the duty to use watchfulness and care. Justice Field, in discussing a case similar to the present one, says: "The failure of the engineer to sound the whistle or to ring the bell, if such were the fact, did not relieve the deceased from the necessity of taking ordinary precautions for her safety. Negligence of the company's employes in these particulars was no excuse for negligence on her part. She was bound to listen and to look before attempting to cross the railroad track, in order to avoid an approaching train, and not to walk carelessly into the place of possible danger. Had she used her senses she could not have failed both to hear and to see the train which was coming. If she omitted to use them, and walked thoughtlessly upon the track, she was guilty of culpable negligence, and so far contributed to her injuries as to deprive her of any right to complain of others. If, using them, she saw the train coming, and yet undertook to cross the track, instead of waiting for the train to pass, and was injured, the consequences of her mistake and temerity cannot be cast upon the defendant." (*Railroad Co.* v. *Houston*, 95 U. S. 697.) This language is quoted with approval by Justice Blatchford in *Schofield* v. *C. M. & St. P. Railway Co.*, 114 U. S. 615, 5 Sup. Ct. 1125. (See, also, *Dascomb* v. *Railroad Co.*, 27 Barb. 221; *Haas* v. *C. R. & I. Railroad Co.*, 47 Mich. 401, s. c. 8 Am. and Eng. R. R. Cases, 268, 11 N. W. 216; *Schaefert* v. *C. M. & St. P. Railroad Co.*, 62 Iowa 624, s. c. 14 Am. & Eng. R. R. Cases, 696, 17 N. W. 893; *Taylor* v. *Missouri Pac. Railway Co.*, 86 Mo. 457; *Pepper* v. *Southern Pac. Railway Co.*, 105 Cal. 389, 38 Pac. 974; *Union Pac. Railway Co.* v. *Adams*, 33 Kan. 427, s. c. 19 Am. & Eng. R. R. Cases, 376, 6 Pac. 529; Beach on Contrib. Neg. Sec. 185; 1 Thompson on Neg. p. 430; *Hearne* v. *Southern Pac. Railroad Co.*, 50 Cal. 482.)

In this case, the deceased and two of his companions lived in the vicinity of this crossing. Their hired driver passed it frequently. He had passed it once before on that day. He was an experienced driver. His team was gentle. He and

they were familiar with the crossing, from living in its vi-
cinity, and, presumably, with the passage of trains.   They
knew that the vision was more or less obstructed at that point,
and that they would be within 45 feet of the track before they
could see a passing train.   They knew there was no opportu-
nity to turn out at this point.   And yet, in the face of all this,
they trotted the team up to within 30 feet, at most (to take
the driver's account), before their attention was given to the
probable danger.   They then found it upon them (if the story
of the survivors is to be taken as true), and were compelled
to make the dash over to save themselves.   They neither
stopped, nor looked, nor listened.   In fact, they made no use
of their senses.   It seems that they might have checked their
team with safety.   All of these precautions were omitted.
The attention they should have given to their own safety they
doubtless gave to the skating party; and now it is sought to
have the railroad company compensate the brothers and sisters
for the death of their brother, when he and his companions,
by the most ordinary care, could have avoided it.   We do not
think the blame for the loss thus occasioned should be cast
upon the defendant.   Under the assumption of the trial court
that it had failed in its duty, it was guilty of negligence, and
subject to punishment.   But that is no sufficient reason why
the deceased and his companions should be held blameless.   It
does not alter the case that the deceased endeavored to save
himself by leaving the carriage, and thus fell before the train.
The determining fact in the case is that the party went reck-
lessly and heedlessly into the danger from which he thus
sought to escape.   The District Court committed no error in
directing a verdict for the defendant.

But the plaintiffs insist that it is the rule adopted by this
Court that he who relies upon contributory negligence as a
defense must allege and prove it, and that therefore the action
of the lower court was wrong, in view of the fact that the de-
fendant offered no proof of negligence on the part of deceased.
This rule is well settled by several decisions of this Court, as
plaintiffs contend.   (*Higley* v. *Gilmer*, 3 Mont. 90; *Wall* v.

*Helena Street Railway Co.*, 12 Mont. 44, 29 Pac. 721; *Nelson* v. *City of Helena*, 16 Mont. 21, 39 Pac. 905; *Mulville* v. *Pac. Mut. Life Insurance Co.*, 19 Mont. 95, 47 Pac. 650.) But it is a corollary to that rule, also recognized by this Court, as is well said by Justice De Witt in *Nelson* v. *City of Helena*, *supra*, "that whenever the plaintiff's own case raises a presumption of contributory negligence the burden of proof is immediately upon him. In such a case it devolves upon the plaintiff, as of course, to clear himself of the suspicion of negligence that he has himself created. He must make out his case in full; and, where the circumstances attending the injury were such as to raise a presumption against him in respect to the exercise of due care, the law requires him to establish affirmatively his freedom from contributory fault." The case at bar, in our opinion, comes squarely within the principles here announced.

The judgment and order appealed from will therefore be affirmed.

*Affirmed.*

Hunt and Pigott, JJ., concur.