The order appealed from is affirmed, except that it is reversed in respect of the ballot marked No. 2, and it is ordered that that ballot be counted as giving one vote to Mr. Moran.

Order modified, so that ballot No. 2 is counted as one vote for Mr. Moran, and, as thus modified, affirmed, without costs.  All concur.

## SPENCER v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Second Department.   January 24, 1908.)

1. RAILROADS—ACCIDENTS AT CROSSINGS—DUTY TO STOP AND LOOK—NEGLIGENCE OF PERSONS INJURED—EVIDENCE.

Evidence in an action to recover for injuries received in a crossing accident, while driving an automobile, examined, and *held* to show that plaintiff was guilty of contributory negligence in not discovering the approach of the train and stopping the automobile.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 41, Railroads, §§ 1146, 1147.]

2. SAME—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.

In an action to recover for injuries received in a crossing accident, while driving an automobile, where the evidence was clear that plaintiff could have seen the train in time to stop, if he had taken proper precautions, the fact that he testified that he looked several times and did not see it did not justify submitting the question of negligence to the jury.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 41, Railroads, §§ 1169–1186.]

Gaynor, J., dissenting.

Appeal from Trial Term, Kings County.

Action by John H. Spencer against the New York Central & Hudson River Railroad Company.  From a judgment for plaintiff, defendant appeals.  Reversed, and new trial granted.

Argued before JENKS, HOOKER, RICH, MILLER, and GAYNOR, JJ.

A. B. Parker (Robert A. Kutschbock, on the brief), for appellant.
Stephen C. Baldwin, for respondent.

RICH, J.  This is an appeal from a judgment in favor of the plaintiff in an action brought to recover damages for personal injuries and the order denying defendant's motion for a new trial.

Plaintiff was injured while attempting to cross the railroad tracks of defendant in front of one of its trains at Van Cortlandt Park.  He was the chauffeur driving an automobile in which there were seated at the time, besides the plaintiff, Frank B. Read, Mr. and Mrs. Noakes, and their daughter.  At this crossing defendant maintained a double track.  The automobile coming from the west had safely crossed the first or south-bound track and was struck by a passenger train going north on the north-bound track.  As plaintiff approached this crossing from Spuyten Duyvil creek, a distance of 175 feet, he had a clear and uninterrupted view of the track to the south, upon which the train was coming, for a distance of 2,000 feet to Independence Bridge.  The train was running at a speed of 40 miles an hour when it passed under

Independence Bridge. When half way between the bridge and the crossing, and distant about 2,000 feet from it, the speed was reduced to 35 miles an hour, and it passed over the crossing at a speed of 15 miles an hour. The plaintiff testified that after the automobile crossed the creek it did not exceed in speed 3 or 4 miles an hour.

The evidence of the plaintiff is that when he crossed the bridge over the creek he looked towards the south to see if there was a train coming, that he was able to see as far south as Independence Bridge, that he saw no train, that he then proceeded very slowly over an upgrade to the crossing, that when he was about 25 or 30 feet from it he looked again to the south and again saw the tracks as far as Independence Bridge, and that he saw no train approaching. At the time of the accident several hundred people had gathered at the station, 20 feet from the crossing, waiting for the arrival of trains. They were standing on both sides of the tracks; a south-bound train being scheduled to arrive at this station one minute after the north-bound train, and both were on time. The south-bound train was standing at a water tank 130 feet north of the station at the time of the accident. It is agreed by all that this train was not moving. Consequently it presented no impending danger to plaintiff. Many persons who had been participating in golf and ball games in the neighborhood were proceeding down the road to the station; the automobile being hemmed about by these people. They were in front, in its rear, and on both sides, all going in the same direction. Plaintiff did not stop as he approached the crossing, and as he was passing over the first rail of the north-bound track some of the people about him screamed and fell back. He then looked to the south and saw the approaching train about 400 feet away, and immediately gave the machine more power in an effort to cross ahead of the train, which struck the automobile, killing Mr. Read, and injuring plaintiff and the other persons riding with him. Miss Noakes subsequently brought an action against this defendant for damages alleged to have been sustained by her, and the recovery has been upheld upon the ground that her age, sex, and position she occupied in the automobile removed the case from the rule which imposes the duty upon a passenger in a vehicle approaching a railroad crossing of looking and listening, it having appeared on the trial that she neither looked nor listened (Noakes v. N. Y. C. & H. R. R. Co., 121 App. Div. 716, 106 N. Y. Supp. 522); and the Appellate Division, First Department, in a carefully written opinion by Mr. Justice Ingraham (107 N. Y. Supp. 1068), has recently reversed a judgment obtained by the executrix of Mr. Read, holding that the evidence established affirmatively the negligence of deceased as matter of law. He says:

"It was certainly contributory negligence to place this automobile in front of a rapidly approaching train, where there was nothing to obstruct the view or to prevent those in the automobile from seeing the approaching train; and while the deceased was not chargeable with the negligence of chauffeur, it was his duty to look and listen for approaching trains when he was approaching the track, although a passenger, and to prevent, so far as he could, the chauffeur from crossing in front of the train, and a failure to perform that duty is contributory negligence. The duty imposed upon the deceased required that he should look and listen before the vehicle is placed in a position that an ac-

cident would result if a train is approaching, and a failure to perform that duty is contributory negligence that relieves the defendant from liability."

The special circumstances in the Noakes Case do not exist in the case at bar, as the plaintiff is a man 41 years of age, in full possession of his faculties, and there is nothing appearing that would relieve him from the duty of exercising care in approaching this crossing. The accident occurred in broad daylight, on a clear, pleasant day. The evidence establishes to our entire satisfaction that the train which collided with the automobile was in plain sight long enough to have enabled him to shut off the power and bring the machine to a standstill before reaching the track. At the rate of speed at which he was moving he might have stopped the car almost immediately. It is impossible to believe that with the exercise of ordinary care the plaintiff could not have seen the approaching train and avoided the accident. The only diligence shown to have been exercised by plaintiff was to look from two different points to the south where the train was approaching in plain view without seeing it. He passed over the last 30 feet before reaching the tracks, the most dangerous part of the route, without looking; and it is no excuse to say that he was hemmed in by the people bound for the station. These conditions were only temporary, and would shortly pass away. Common prudence, if necessary to properly handle his machine, required him to stop and proceed no further until he could exercise full vigilance. Heaney v. Long Island R. R. Co., 112 N. Y. 122, 19 N. E. 422. The fact that he did not see the train under these circumstances did not create an issue of fact to be determined by the jury, and their verdict cannot be permitted to stand. Dolfini v. Erie R. R. Co., 178 N. Y. 1, 70 N. E. 68; Fiddler v. N. Y. C. & H. R. R. R. Co., 64 App. Div. 95, 71 N. Y. Supp. 721; Swart v. N. Y. C. & H. R. R. R. Co., 81 App. Div. 402, 80 N. Y. Supp. 906; McAuliffe v. N. Y. Central & H. R. R. R. Co., 88 App. Div. 356, 84 N. Y. Supp. 607.

The judgment and order must be reversed, and a new trial granted; costs to abide the event. All concur, except GAYNOR, J., who dissents:

GAYNOR, J. (dissenting). The plaintiff was injured while crossing the defendant's double track railroad in a motor car which he was driving. His employer was also in the car with his wife, son, daughter and another person. The car was going east along a public road, and the tracks ran north and south. The crossing was in a large city park called "Van Cortlandt Park" in the open northern territory of the city of New York. The motor car had passed over the first track and was struck by the engine of a passenger train going north at or about the right hind wheel as it was nearly over the second track. All the way from a point on the road whence the motor car had come, about 170 feet from the first track, i. e., at a bridge over Spuyten Duyvil creek, the view south along the railroad tracks was clear for 2,000 feet, namely, to a park road bridge under which the tracks ran. The plaintiff testifies that he looked south along the tracks at the said point 170 feet from the first track, and again when 25 to 30 feet from

the said track, but saw no train. Except for facts now to be stated, the decision in Dolfini v. Erie R. Co., 178 N. Y. 1, 70 N. E. 68, would apply to the case, i. e., that the plaintiff must have seen the train in time to avoid the collision if he had looked, for he could not have looked without seeing it if it was there, i. e., between the crossing and the bridge under which it came. But the facts are such in this case that the train might not yet have come under the bridge and in sight when the plaintiff looked even the second time.

As he came along the road to and upon the crossing there was a great throng of men, women and children massed around the motor car, and so close as almost to touch it. They were in front, behind and on each side. They had been at the ball games in the park, and the games being just then over, were going home, some by railroad, which had platforms to the west side of the crossing. They were swinging bats and talking and shouting hilariously. There was also the noise of a waterfall in Spuyten Duyvil creek at the bridge already mentioned which the motor car crossed, and also the noise of the motor car itself which was going upgrade. It was going slowly—so slowly, as the jury could have found, that it could not go slower without coming to a stop. The part of the crowd in front of it went upon the crossing as it followed along. The view of the track to the north was obstructed by foliage and a station building along the said distance of 170 feet. The plaintiff testifies that as he was passing the said building he heard the noise of an engine exhausting steam to the north, and as he cleared the building he looked in that direction and saw it by the water tank and was not certain whether it was in motion or standing there. There is other evidence that the engine was there with a train and making noise. As the motor car had crossed the first track and got on or over the first rail of the second there was a sudden cry from the crowd, which sprang out of the way, and as the plaintiff looked south again he saw the train which struck the motor car coming about 400 feet away. He immediately put on power to go ahead as fast as possible. It would have taken more time to back up. The testimony of the engineer is that as he came under the said bridge 2,000 feet from the crossing he was going 40 miles an hour, that when he had got half way from there to the crossing he was going 35 miles an hour and that he went over the crossing at 15 miles an hour. There is a dispute as to whether the engine bell was rung, but it may be assumed that it was. No whistle was blown. There was a dispute whether the electric bell at the crossing rang. The jury could have found that the noise from the holiday crowd was so great that neither bell could be heard. It was a Sunday afternoon in June, about 5 o'clock.

Considering how slowly the motor car was moving with the crowd pressed about it, it cannot be said that when the plaintiff looked south when 25 to 30 feet from the first track the train had already come in sight. The learned brief for the appellant gives the number of seconds which the train took to get from the bridge to the crossing, 34.09 seconds, and then figures out mathematically that at the rate of 4 miles an hour the motor car would have come from the said point 170 feet from the first track to the rail of the second track in about 31.1 seconds, so that the train must have been in sight 2.99 seconds when the

said point was reached. This would do if we could say that the motor car averaged that rate. The plaintiff testifies that it did not go over 3 or 4 miles an hour approaching and crossing the first track, but he also says it was going so slow that it could not go slower without stopping; and from this and all of the evidence the jury could have found that it was going much slower than 3 or 4 miles an hour. It could go no faster than the noisy and loitering crowd which surrounded it. And considering all of the distractions which necessarily engaged the plaintiff's attention, it cannot be said as matter of law that he should have looked again between the time of his second look, i. e., when 25 to 30 feet from the first track, and his third look when he saw the engine 400 feet away. He had many things to look to.

The learned trial judge was not in error in refusing to charge the request of defendant's counsel that if the train was in sight when the plaintiff "looked 30 feet from the track," proceeding "was negligence on his part and he cannot recover." In sight might mean 2,000 feet away—coming under the bridge—and whether it was negligence to proceed, he being so close to the track and the train so far away, was a question of fact and not of law. Requests have to be technically correct in order to base error on their refusal.

No claim is made that the defendant was not negligent. In the case of Noakes v. This Defendant, 121 App. Div. 716, 106 N. Y. Supp. 522, which grew out of this same collision, the question of the defendant's negligence was disposed of. Its negligence in coming to such a crossing not only in the city but in a public park and with a crowd ahead, at such a rate of speed, seems to have been gross.

The judgment should be affirmed.