WALTERS, RESPONDENT, v. CHICAGO, MILWAUKEE &
PUGET SOUND RY. CO. ET AL., APPELLANTS.

(No. 3,261.)

(Submitted May 22, 1913. Decided June 14, 1913.)

[133 Pac. 357.]

*Personal Injuries—Railroad Crossings—Automobiles—Duty of
Driver—Contributory Negligence—Evidence—Excessive Verdicts.*

Personal Injuries—Railroad Crossings—Warning—Positive and Negative
Testimony—Effect.
1. *Held,* in an action for damages sustained in a railroad crossing
accident, that the negative character of the testimony of plaintiff's witnesses to the effect that they heard no bell rung or whistle sounded as
the train approached the crossing, which was opposed to the positive
statement by defendant company's employees that warning was given,
did not render it insufficient to warrant the submission of the case to
the jury or authorize a finding in favor of plaintiff.

Same—Automobiles—Care Required of Driver—Contributory Negligence.
2. The driver of an automobile may not, in the absence of express
statute, be held guilty of contributory negligence, as a matter of law,
for failing to stop, look and listen when approaching a railway crossing, his duty in this regard going no further than to exercise such care
and caution for his own safety as might be expected of an ordinarily
prudent person under like circumstances.

Same—Contributory Negligence—Evidence.
3. Evidence *held* not to necessitate the conclusion that plaintiff was
guilty of contributory negligence in attempting to drive an automobile
over a railway crossing situated in a cut from eight to twelve feet
deep, where he was struck by a train running from forty-five to fifty-five miles an hour.

Same—Excessive Verdict.
4. Plaintiff at the time of the accident was twenty-three years of age,
earning $125 per month. The injuries received were such as to forever
prevent him from pursuing his trade of stereotyper. At the time of
the trial he was earning $80 per month. His earning capacity had
been totally destroyed for about one year. His injuries were serious,
one of their effects being a shortening and partial paralysis of one
of his legs. *Held,* that a verdict for $15,000 was not so excessive as
to evince passion and prejudice.

*Appeal from District Court, Silver Bow County; J. J. Lynch,
Judge.*

ACTION by Charles Walters against the Chicago, Milwaukee &
Puget Sound Railway Company and another. Judgment for
plaintiff. Defendants appeal from the judgment and from an
order overruling a motion for new trial. Affirmed.

*Mr. George F. Shelton, Mr. Fred J. Furman,* and *Mr. A. J. Verheyen,* for Appellants, submitted a brief; *Mr. Furman* argued the cause orally.

Since the introduction of automobiles, the various courts which have had under consideration crossing accidents have adopted a most rigid rule in fixing the degree of care necessary to be exercised by drivers of automobiles. The courts have required that the driver of an automobile approaching a railway crossing shall be held rigidly to the requirement that he stop, look and listen for an approaching train; and that a failure on his part to do so precludes a recovery, in case of accident. They have held that the automobile is absolutely under the control of the driver. It can be stopped at any point instantaneously. It can be started at any time and at any place. It is a mechanical contrivance, entirely under the control of the driver, and responds immediately and readily to his will. Whatever modification may have been made with reference to the drivers of teams approaching a railway crossing has been held not to apply to automobiles. The machine is directly subject to the will and control of the driver; and a failure on his part to stop his car at a railway crossing and look and listen for an approaching train is such negligence as precludes a recovery, in case of a collision. (28 Cyc. 41; *Brommer* v. *Pennsylvania R. Co.,* 179 Fed. 577, 29 L. R. A. (n. s.) 924, 103 C. C. A. 135; *New York Cent. & H. R. R. Co.* v. *Maidment,* 168 Fed. 21, 21 L. R. A. (n. s.) 794, 93 C. C. A. 413; *Spencer* v. *New York Cent. & H. R. R. Co.,* 123 App. Div. 789, 108 N. Y. Supp. 245; affirmed in 197 N. Y. 507, 90 N. E. 1166; *Benert* v. *Long Island R. Co.,* 145 App. Div. 552, 130 N. Y. Supp. 271; *Read* v. *New York Cent. & H. R. R. Co.,* 123 App. Div. 228, 107 N. Y. Supp. 1068; *Horandt* v. *Central R. R. Co. of N. J.,* 78 N. J. L. 190, 73 Atl. 93; *Chase* v. *New York Cent. Ry. Co.,* 208 Mass. 137, 94 N. E. 377; Huddy on Automobiles, 3d ed., sec. 164.)

The driver of any vehicle approaching a railway crossing must look and listen for an approaching train, and, where necessary in the exercise of ordinary care and caution, must stop his

vehicle; and a failure to do so precludes a recovery. (*Sprague* v. *Northern Pacific Ry. Co.,* 40 Mont. 481, 107 Pac. 412; *Hunter* v. *Montana Cent. Ry. Co.,* 22 Mont. 525, 57 Pac. 140.)

There was no sufficient, or any, testimony introduced on the part of the plaintiff to prove a failure on the part of the defendants to ring the bell and sound the whistle; and the submission to the jury of the question of negligence on the part of the defendants in the case was error. The testimony upon the question of whether the bell was rung and the whistle sounded, in the case, divides itself into two classes. On the one hand, the testimony on the part of the defendants is clear and absolute that the bell was rung and the whistle sounded; on the other, the testimony on the part of the witnesses for the plaintiff is negative, that they did not hear it. Our contention is that there was not sufficient evidence to raise an issue that might properly be submitted to the jury in this regard; and the court erred in submitting to the jury this question; but, if the matter was properly submitted to the jury, the jury could not, under the instructions of the court, disregard the positive statements of the witnesses that the bell was rung and the whistle sounded. (*Chase* v. *New York Cent. Ry. Co.,* 208 Mass. 137, 94 N. E. 377; *Horandt* v. *Central R. R. Co. of N. J., supra.*)

*Messrs. Maury, Templeman & Davies,* for Respondent, submitted a brief; *Mr. H. L. Maury* and *Mr. J. O. Davies* argued the cause orally.

Whether plaintiff at the time of the accident was exercising the care required of him by law was a question for the jury. (*Lorenz* v. *Burlington etc. Ry. Co.,* 115 Iowa, 377, 56 L. R. A. 752, 88 N. W. 835; *Wheeler* v. *Oregon R. & N. Co.,* 16 Idaho, 375, 102 Pac. 347; *Grant* v. *Oregon R. & N. Co.,* 54 Wash. 678, 25 L. R. A. (n. s.) 925, 103 Pac. 1126; *Thompson* v. *New York Cent. R. Co.,* 110 N. Y. 636, 17 N. E. 690; *Greenwaldt* v. *Lake Shore etc. Ry. Co.,* 165 Ind. 219, 74 N. E. 1081; *Alabama etc. Ry. Co.* v. *Lowe,* 73 Miss. 203, 19 South. 96.) We also desire to call the court's attention to the case of *Pendroy* v. *Great Northern R. R. Co.,* 17 N. D. 433, 117 N. W. 531. This is an automobile

case, and is frequently cited by the courts and by text-writers on automobiles, as laying down the proper rule of conduct for the automobile driver approaching a railroad crossing. In this case the plaintiffs did not stop nor look. They listened, but heard no train. They were injured. The court held that the question of plaintiff's negligence was one for the jury. See, also, *Texas etc. Ry. Co.* v. *Hilgartner* (Tex. Civ. App.), 149 S. W. 1091, also an automobile case, which lays down the same rule of law for automobile drivers as for other travelers over a public road. (*Allen* v. *Boston etc. R. Co.,* 197 Mass. 298, 83 N. E. 863; *Hartman* v. *Chicago etc. Ry. Co.,* 132 Iowa, 582, 110 N. W. 10; *Louisville etc. R. Co.* v. *Lucas,* 30 Ky. Law Rep. 539, 99 S. W. 959; *Central etc. Ry. Co.* v. *Hyatt,* 151 Ala. 355, 43 South. 867; *Vance* v. *Atchison etc. Ry. Co.,* 9 Cal. App. 20, 98 Pac. 41; *Missouri etc. Ry. Co.* v. *James,* 55 Tex. Civ. App. 588, 120 S. W. 269; *Chesapeake etc. Ry. Co.* v. *Hawkins* (Ky.), 124 S. W. 836; *Crabtree* v. *Missouri etc. R. Co.,* 86 Neb. 33, 136 Am. St. Rep. 663, 124 N. W. 932; *Farris* v. *Southern R. Co.,* 151 N. E. 483, 66 S. E. 457.)

After the plaintiff had passed the Canty automobile as before said, he slowed down his automobile, shut off the power. It had rubber tires, and he affirms that he could hear the approach of a train as well with his automobile going as he could with it standing still. Under these circumstances the exercise of ordinary care on his part did not require him to stop. (*Kujawa* v. *Chicago etc. Ry. Co.,* 135 Wis. 562, 116 N. W. 249; *New York etc. R. Co.* v. *Moore,* 105 Fed. 725, 45 C. C. A. 21.)

If a person approaches a railroad crossing at a place where he cannot himself see up and down the track, and sees persons working at the crossing or passing to and fro over the crossing with apparent safety to themselves, it is, to a certain extent, an assurance of safety to the person who is not in a position to see the railroad, and sufficient to cause a person to relax his vigilance and perhaps fail to take some precautions which he otherwise might take; and this is a circumstance which is also recognized by the law. (*Henry* v. *Cleveland etc. Ry. Co.,* 236 Ill. 219, 86 N. E. 231.)

And the cases generally hold that it is not necessary for plaintiff to look for a train where it is impossible for him to see. (*Vance* v. *Atchison etc. Ry. Co.*, 9 Cal. App. 20, 98 Pac. 41; *Central of Georgia Ry. Co.* v. *Hyatt*, 151 Ala. 355, 43 South. 867.)   Even though, under the evidence in the case, the court should be of the opinion that there would be four or five feet space between the front wheels of plaintiff's automobile and the track when plaintiff reached the place where he would be able to see up and down the track, still the court could not say as a matter of law that he was guilty of negligence in failing to discover the train in this short space.   (*Erie R. R. Co.* v. *Schultz*, 183 Fed. 673, 106 C. C. A. 23.)

The presumption is, that all men act rightly until the contrary appears.   It is often expressed in the maxim "*Omnia praesumunter rite esse acta*"; and from this follows another proposition of the law, that no person is in the law bound to anticipate injury from the negligence of another.   Under these presumptions the plaintiff in this case, when he approached the railroad crossing in question, had a right to presume and rely upon the presumption that the defendant would perform its duties under the law, and would ring the bell on its locomotive and blow the whistle as required by law, and this is peculiarly true where the crossing, like the crossing in question, is an obscure one.   (*Henry* v. *Cleveland Ry. Co.*, supra; *Cleveland etc. Ry. Co.* v. *Harrington*, 131 Ind. 426, 30 N. E. 37; *Malott* v. *Hawkins*, 159 Ind. 127, 63 N. E. 308; *Illinois Cent. R. Co.* v. *Moss*, 142 Ky. 658, 134 S. W. 1122; *Moore* v. *Wabash R. Co.*, 157 Mo. App. 53, 137 S. W. 5; *Toledo etc. R. Co.* v. *Lander*, 48 Ind. App. 56, 95 N. E. 319; *Lewis* v. *Rio Grand Western Ry. Co.* (Utah), 123 Pac. 97.).

MR. JUSTICE SANNER delivered the opinion of the court.

At about 6:12 P. M., on July 28, 1910, the respondent, while driving a Ford runabout, was struck on a public road crossing between Butte and Anaconda by one of appellant company's trains.   His companion was instantly killed and he seriously injured.   To recover for such injuries he brought this action, alleging as negligence on the part of appellants that they were

running the train at excessive speed and that they failed to blow the whistle, ring the bell or give any alarm of its approach. Respondent had a verdict for $15,000, upon which judgment was entered. This appeal is from that judgment and from an order overruling a motion for new trial.

1. It is claimed that the evidence of appellants' failure to sound the whistle or ring the bell was insufficient to take the case to the jury, and that in the face of positive testimony that the whistle was sounded and the bell rung, the jury were not [1] authorized to find for the respondent. It is quite true that the testimony of the engineer and other employees of the appellant company is positive and that of one other witness rather ambiguous, to the effect that the bell was rung and the whistle sounded in the regular way at from fifty to eighty rods from the crossing. The respondent, however, testified that as he approached the crossing and for some time before reaching it he was alert for any warning, having both looked and listened for the approach of a train, and that the whistle was not sounded nor the bell rung. D. M. Canty, who with his brother and niece had made the crossing a very few seconds before and who were only twenty or thirty feet away, whose hearing was good and who heard the sound of the train as it struck the respondent's machine, testified that he heard no whistle, nor bell nor other warning of the train's approach; and James A. Canty also testified that he heard no whistle nor bell, though he hears all sounds plainly and distinctly. The niece, Miss Dugan, testified to similar effect. The sufficiency of the foregoing to raise an issue, and the present contention of appellants against it are alike settled in *Riley* v. *Northern Pac. Ry. Co.,* 36 Mont. 545, 93 Pac. 948. At page 559 of that decision Mr. Justice Smith, speaking for this court, said: "Appellant affirms that it was proven by the uncontradicted evidence that the bell was ringing, and that there was a headlight upon the rear of the switch-engine. On the part of the defendant there was positive testimony that the bell was ringing and the light burning. The plaintiff's witnesses simply testified that they did not hear any bell or see any light. Appellant argues that this negative testimony is of no weight, in

view of the positive testimony opposed to it. Ordinarily, when one witness testifies positively that a certain thing existed or happened, and another witness, with equal means of knowing, testifies that the things did not exist or happen, the so-called negative testimony is so far positive in its character that a court could not say that it was entitled to less weight than the affirmative testimony.''

2. The testimony of respondent tended to show that while he looked and listened as he approached the crossing, he did not [2] ''stop, look and listen,'' and the question is presented by appellants whether the driver of an automobile approaching a railway crossing is not charged with the absolute duty to ''stop, look and listen.'' The appellants, conceding that as to other vehicles using a public highway, the general rule upon approaching a railway crossing is to exercise such care and caution as might be expected of an ordinarily prudent person under the circumstances, insist that ''the duty of an automobile driver approaching tracks where there is restricted vision, to stop, look and listen, and to do so at a time and place where stopping, and where looking, and where listening will be effective, is a positive duty.'' (*New York Central & H. R. Co.* v. *Maidment,* 168 Fed. 21, 21 L. R. A. (n. s.) 794, 93 C. C. A. 413; *Brommer* v. *Pennsylvania R. Co.,* 179 Fed. 577, 29 L. R. A. (n. s.) 924, 103 C. C. A. 135.) Both of the decisions just cited emanated from the circuit court of appeals for the third circuit, speaking through Judge Buffington, and they proceed upon the mistaken ideas that a railroad has some sort of a paramount right to the use of a public highway crossing, and that whether a citizen using the highway on approaching such crossing must stop, look and listen, depends upon the motive power he is using and its amenability to control; whereas the true rule, as we understand it, is that the citizen has an equal right with the railway company to use the crossing, and the amenability to control of the motive power he is using bears more properly upon how near he may come to the place of danger before taking the precautions that common prudence generally requires. Of these cases nothing further need be said than this: If they are to be taken to hold, in the ab-

sence of express statute, that it is contributory negligence as a matter of law for the driver of an automobile not to stop, look and listen before using a highway crossing, without regard to whether ordinary prudence would require such a course, they are contrary in spirit to the rule announced by the superior authority of the supreme court of the United States (*Grand Trunk Ry. Co.* v. *Ives,* 144 U. S. 408, 36 L. Ed. 485, 12 Sup. Ct. Rep. 689), are against the weight of general decision (*Texas etc. Ry. Co.* v. *Hilgartner* (Tex. Civ. App.), 149 S. W. 1091; *Pendroy* v. *Great Northern Ry. Co.,* 17 N. D. 433, 117 N. W. 531; *Spencer* v. *New York Central & H. R. Co.,* 123 App. Div. 789, 108 N. Y. Supp. 245; *Bonert* v. *Long Island R. Co.,* 145 App. Div. 552, 130 N. Y. Supp. 271; *Hartman* v. *Chicago G. W. Ry. Co.,* 132 Iowa, 582, 110 N. W. 10; *Louisville & N. R. Co.* v. *Lucas,* 30 Ky. Law Rep. 539, 99 S. W. 959; *Vance* v. *Atchison etc. Ry. Co.,* 9 Cal. App. 20, 98 Pac. 41; *Missouri etc. Ry. Co.* v. *James,* 55 Tex. Civ. App. 588, 120 S. W. 269; *Chesapeake & O. R. Co.* v. *Hawkins* (Ky.), 124 S. W. 836), and are in conflict with the settled rule in this state. (*Mason* v. *Northern Pac. Ry. Co.,* 45 Mont. 474, 124 Pac. 271; *Sprague* v. *Northern Pac. Ry. Co.,* 40 Mont. 481, 107 Pac. 412; *Hunter* v. *Montana Central Ry. Co.,* 22 Mont. 525, 57 Pac. 140.)   In the *Sprague Case* appears the following: "Whether, in selecting the point which they did select to stop and listen for approaching trains, Nelson and Chappel exercised ordinary care to make their listening effective, and whether in doing what they did, from that point until the injury occurred, they exercised such care and prudence as reasonable men under like circumstances would have exercised, were questions of fact for the jury to determine"; and in the *Mason Case* this court, disapproving of certain instructions, said: "Neither of these instructions correctly states the law.   They imposed too great a burden upon the plaintiff.   If such were the law, a person approaching a railroad track would either be obliged to keep a constant lookout in both directions, or it would be incumbent upon him, in order to avoid the imputation of contributory negligence, to stop, if necessary, and look for a train at the last available point, and at the last moment of time

before crossing the track. The law is that one desiring to cross a railroad track must exercise reasonable care for his own safety.'' We see no reason to change these rules either for or against any class of vehicles in lawful use.

3. The passages just quoted are decisive also of the third con-
[3] tention of appellants, *viz.,* that the particular circumstances required respondent to stop, look and listen, and that, as he did not stop at all, nor look and listen where such looking and listening would have revealed the approach of the train, he is *ipso facto* convicted of contributory negligence. The argument, although not so expressed, seems to be that if the respondent's view as he neared the crossing was restricted so that he could not see whether a train was coming, he should have proceeded, with his machine under such control as that he could instantly stop, to a point between the walls of the cut and the track where he could see, and there look and govern himself accordingly, or that he should have stopped his machine, gone forward into the cut afoot and ascertained whether the coast was clear; or, if a train coming from Butte toward the cut was visible, then failure to see it was due to failure to look at the right time and place—and in either case there can be no recovery under the *Sprague* and *Hunter* decisions. A short review of the salient features of the case will disclose that the matter is not so easily settled. The respondent was struck by a passenger train which had left Butte shortly before and was running at not less than forty-five nor more than fifty-five miles an hour. The crossing is in a cut variously estimated at from eight to twelve feet deep at that point, which cut extends from the crossing eastward about 1,000 feet. The county road east of the crossing follows the general contour, which is about the same as the top of the cut, to a point about 125 feet from the crossing; there the approach to the crossing begins, and it consists of another cut (at a right angle to the railway cut), through which the county road gradually descends from the general level to the level of the track. According to respondent, a train approaching the cut from Butte is visible to the traveler on the county road from where the approach to the crossing begins back

to a point one-eighth to one-fourth of a mile distant; after proceeding into the approach a little distance such a train could not be seen, whether in or out of the cut; nor could such a train coming into the cut be seen before the traveler on the county road reached the point above mentioned, one-eighth to one-fourth of a mile from the cut; when he reached this space he took "a reasonably long look" to the east for a train and saw nothing; he then looked westward with the like result; he then looked forward and being at the approach to the cut saw the Canty machine coming toward him; alert then for any warning or sound of a train, anxious also to avoid meeting the Canty machine on the crossing, he checked his speed, descended slowing and quietly toward the track, saw the other machine pass safely over the track, passed the other machine about twenty or thirty feet from the crossing and, still listening for a train, reached the track where the accident occurred. He also testified that to see a train after once entering the approach to the crossing he would have to proceed to a point where his front wheels would be on the track; that there is a curve in the track where it enters the east end of the cut and that to stop his car, walk forward to the crossing to view the track, return to the car and make the crossing would require from two to five minutes. By way of maps, profiles and photographs there is evidence on behalf of appellants to show that when a passenger train is in the cut, about six feet of it projects above the top of the cut. East of the crossing, between the county road and the cut, are a pole fence and the right of way fence, built of posts and wire; these to some extent obstruct the view, and while we think that a train drifting downgrade through the cut is visible to one on a level with the top of the cut whose attention was drawn to it, it would not be obtrusive without some warning. The witness Nick testified that he could stand in the county road at a point eighty feet from the track and still see a passenger train coming from the east; but how much above or below his eyes would be the eyes of the respondent sitting in a Ford runabout does not appear. There was also testimony that the curve in the track just east of the cut is a three-degree curve; that from

the east end of the ties at the crossing to the wall of the cut is eleven feet; that the distance from the front edge of the front wheel to the seat of a Ford Runabout is five feet six inches, and that the width of a passenger coach is ten feet, so so that it extends over either side about one foot beyond the end of the ties.

Doubtless the case made by appellants was sufficient to defeat a recovery; but it must be remembered that if any substantial conflict existed in the evidence, this court will not substitute its views for those of the jury, who were the judges of the weight and credibility of respondent's showing. If they believed that the curve to the east of the cut prevented a view from the crossing much beyond the end of the cut (1,000 feet away), and that it would take the respondent not less than two minutes to stop his machine, go to the track, take his view, return to the machine and cross, it is quite clear that such a proceeding, unless the train was in the cut, would induce a false rather than a real security, because a train approaching at forty-five or fifty-five miles an hour would traverse the entire visible distance in not to exceed thirteen seconds. If the jury believed that it was not feasible for the respondent—either from lack of knowledge or because of the narrow margin of safety as disclosed by the appellants' own measurements—to stop his machine at a point within the cut where he could have a view without getting off, then he could not be convicted of negligence for failure to do that; and if the jury believed that the respondent did before descending into the cut take a reasonably long look from a point where he says a view was of any value, the facts that he took that look before instead of after his look in the other direction—which in due care he was also bound to take—and that thereafter, though still listening for the possible approach of a train, he gave some attention to the Canty machine—which it was also his duty to avoid and which he saw pass the track in safety—would certainly not necessitate the conclusion that he was guilty of contributory negligence in attempting to cross the track. Crediting the testimony of the engineer and others that the crossing of the Canty machine

elicited two blasts from the whistle of the train, it might well be said that the respondent hearing them and nevertheless proceeding, was chargeable with negligence as a matter of law; but if it be true that the whistle was not sounded then or at all, nor the bell rung, as the respondent and the occupants of the Canty machine say, then the very passage of Canty unchallenged, in the absence of information to the contrary, was some assurance to the respondent that the crossing was safe.

From the views above expressed it follows that no error was committed by the trial court in overruling the motion for nonsuit, or in modifying appellants' offered instructions 2a and 4a, or in refusing appellants' offered instructions 5a and X. The instructions given were undoubtedly correct so far as they went; and if there was any error in failing to more specifically define the care required of the respondent, it is unavailing to the appellants, since no proper instruction on this subject was offered by them. We see nothing in the other rulings complained of to warrant a reversal of this case.

4. We are then brought to the verdict which appellants as- [4] sert is unreasonable and excessive. At the time of the accident the respondent was twenty-three years of age, was a stereotyper by trade, having spent several years in learning that business, and was earning $125 per month. By the injuries received in the accident he is forever barred from again pursuing his trade and at the time of the trial was earning $80 per month running a moving-picture machine. We have here an established loss of $45 per month, or $540 per year, and to purchase an annuity equal to this amount would require approximately $11,000. In addition to this the respondent suffered a total loss of earning capacity for about a year. When struck by the train he was thrown seventy-five feet; his hip socket was fractured, his skull slightly fractured; he sustained other severe external bruises and suffered internal hemorrhages from the intestines and kidneys; he was unconscious for six or eight hours, confined five weeks to his bed, compelled to use crutches for five or six months and a cane for three or four months thereafter. It was a year before he walked without

help. His pain for several weeks was severe; his nervous system sustained serious shock; he has a displacement of the pelvic bone and of the lower spinal processes, causing atrophy, shortening and partial paralysis of one of his legs, an increased susceptibility to tubercular infection and other difficulties. For all this he receives the difference between the amount of the verdict and the proved loss of earning capacity. While the amount awarded may, apart from the circumstances, seem to have been generous, we do not feel authorized to say that it is so excessive as to evince passion and prejudice or to warrant any action by this court.

The judgment and order appealed from are affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.

Rehearing denied July 7, 1913.